PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THREE S DELAWARE, INCORPORATED,
Successor in interest to Steele
Software Systems Corporation,
                    *Plaintiff-Appellant,*

            v.                              No. 06-1227

DATAQUICK INFORMATION SYSTEMS,
INCORPORATED, a Delaware
Corporation,
                    *Defendant-Appellee.*

THREE S DELAWARE, INCORPORATED,
Successor in interest to Steele
Software Systems Corporation,
                    *Plaintiff-Appellant,*

            v.                              No. 06-2056

DATAQUICK INFORMATION SYSTEMS,
INCORPORATED, a Delaware
Corporation,
                    *Defendant-Appellee.*

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(1:05-cv-02017-JFM)

Argued: May 22, 2007

Decided: July 12, 2007

Before WIDENER, WILKINSON, and KING, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Widener and Judge Wilkinson joined.

---

**COUNSEL**

**ARGUED:** Brian Alexander Glasser, BAILEY & GLASSER, L.L.P., Charleston, West Virginia, for Appellant. Beverly Johnson, DORSEY & WHITNEY, L.L.P., Irvine, California, for Appellee. **ON BRIEF:** William F. Ryan, Jr., John F. Carlton, Kenneth Oestreicher, Paul M. Nussbaum, WHITEFORD, TAYLOR, PRESTON, L.L.P., Baltimore, Maryland, for Appellant. James E. Gray, Stephen E. Marshall, Jason C. Rose, VENABLE, L.L.P., Baltimore, Maryland, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Steele Software Systems Corporation, now known as Three S Delaware, Incorporated ("3S"), appeals from the district court's denial of its motion to vacate a 2005 arbitration award of more than $6.1 million (the "Award") rendered in Maryland in favor of DataQuick Information Systems, Incorporated ("DataQuick").[1] On appeal, 3S contends that the court should have vacated the Award on several statutory and common law grounds. More specifically, 3S asserts that (1) a portion of the Award was not drawn from the essence of the underlying agreement, (2) the arbitrator manifestly disregarded relevant law, (3) the Award was procured by undue means, (4) the arbitrator was partial, (5) the Award was procured by arbitrator misconduct, and (6) the arbitrator exceeded his power in making the Award. As explained below, we affirm the district court.

---

[1]Although the Award was rendered against Steele Software Systems Corporation, that entity no longer exists. Its successor in interest, 3S, is pursuing this appeal.

## I.

## A.

3S is a Baltimore-based company that provides title reports and appraisals to financial institutions in the real estate lending business. As part of its business, 3S developed software that allowed financial institutions to more quickly receive appraisals and title reports (the "3S system"). DataQuick, on the other hand, is a nationwide provider of data cataloguing real property features and transactions from several major cities. On January 23, 1996, 3S and DataQuick entered into a License Agreement (the "Agreement"), under which DataQuick agreed to provide 3S with the DataQuick database, which was to be used as part of the 3S system. In exchange for the database, 3S was required to pay DataQuick a licensing fee each month. Pursuant to the Agreement, DataQuick was entitled to either a minimum monthly fee of $7,500 or royalty fees of $5.00 to $7.50 per transaction, depending on the number of transactions that 3S "accessed and billed" in connection with DataQuick's data. Agreement ¶ 4.1.[2] To determine the number of transactions accessed and billed, 3S was to prepare monthly reports detailing 3S's use of the database. *Id.* ¶ 4.4. The Agreement further provides that "3S will not reproduce, sell, publish or in any manner commercially exploit any information obtained through the DATAQUICK Database except as provided by the terms and conditions of this Agreement." *Id.* ¶ 7.3.

The Agreement also contains provisions limiting each party's liability in the event of a breach and directing the parties to arbitrate any dispute arising thereunder. In this regard, the Agreement first provides that neither party will "be liable for any indirect, incidental or consequential damages, including, but not limited to, lost income or lost revenue." Agreement ¶ 6.6. It then provides that any dispute arising under the Agreement is subject to California law, and either party, upon failing to resolve such a dispute, may make a written demand for arbitration to the American Arbitration Association (the "AAA"). *Id.* ¶ 8.4.

---

[2]The Agreement is found at J.A. 193-99. (Citations to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.)

During the course of their dealings under the Agreement, 3S never prepared the mandated monthly reports detailing the number of transactions in which it used DataQuick's database. In order to justify this inaction, 3S contends that it did not access the database enough to trigger any payment of more than the minimum monthly fee. Even so, 3S did not always promptly pay the minimum monthly fees, and on April 27, 2000, the parties entered into another agreement requiring 3S to pay DataQuick $60,000 in installments for unpaid fees. Thereafter, in March 2003, DataQuick terminated the Agreement.

B.

On December 12, 2003, DataQuick filed a seven-count complaint against 3S in California state court. The complaint sought, inter alia, damages in excess of $170,000 for 3S's failure to pay the agreed upon minimum monthly fees, plus restitution in excess of $170,000 for 3S's alleged unjust enrichment. On April 23, 2004, the California court granted 3S's request to compel arbitration and ordered 3S to initiate an action to resolve the dispute before the AAA. When 3S failed to initiate any action before the AAA, the California court issued another order on September 27, 2004, requiring 3S to initiate an arbitration proceeding by September 30, 2004. On September 30, 2004, 3S submitted a one-page online arbitration demand to the AAA. This demand stated that the claim amount was $170,000 and described the claim as follows: "[DataQuick] sued [3S] for breach of contract for allegedly failing to pay for services rendered in a contract to provide real property value data nationally." J.A. 262. 3S then added its own claim for arbitration, alleging that DataQuick "breached first by providing data/information unuseable, outdated or in an insufficient manner. [3S] claims that [DataQuick] anticipatorily breached the contract and frustrated the purpose of the contract by providing useless data or no data at all." *Id.* On October 8, 2004, a representative of the AAA acknowledged receipt of 3S's online arbitration demand and asked DataQuick to file a response thereto on or before October 22, 2004. On October 12, 2004, DataQuick wrote to the AAA explaining that the arbitration claim stemmed from its complaint in the California court and attached the complaint and related court orders. These items were placed in the AAA file.

The parties eventually agreed to the appointment of James W. Constable, a lawyer in Baltimore, Maryland, as arbitrator. The discovery

process was contentious and, throughout the pre-hearing process, DataQuick had difficulty determining its damages because 3S refused to turn over relevant documents detailing the underlying transactions. The arbitrator eventually issued an April 19, 2005 order requiring 3S to disclose documents that would be "sufficient for the Arbitrator and DataQuick . . . to determine, with a substantial degree of certainty, the number of transactions involving [3S's] resale and/or distribution of DataQuick's data." J.A. 562. The arbitrator also informed 3S that a negative inference might be drawn if 3S withheld documents that should have been disclosed.

On April 20, 2005, 3S wrote to DataQuick stating that it was "withdrawing its claim from the arbitration effective immediately." J.A. 222. Notwithstanding this representation, no formal withdrawal request was sent to the arbitrator. During a conference call with the arbitrator on April 26, 2005, however, 3S orally requested permission to withdraw its claim. The arbitrator explained to 3S that "it could withdraw its claim but that its withdrawal would not end the arbitration of [DataQuick's] counterclaim." *Id.* at 223. The arbitrator then suggested that 3S "remain in the case so as not to jeopardize its position." *Id.* After this conference call, 3S made repeated attempts to delay the proceedings, including requesting a California state court to enjoin the arbitration proceedings, failing to timely disclose witness lists and exhibits, and moving to disqualify the arbitrator. During a pre-hearing conference call on May 17, 2005, 3S's counsel again asserted that 3S was withdrawing from the proceedings. The arbitrator explained that 3S had a right to withdraw, but that the arbitration proceedings would continue as to DataQuick's claims. 3S's counsel then summarily withdrew from the conference call.

C.

On May 23, 2005, the arbitration hearing commenced in Baltimore. After DataQuick gave its opening statement, in which it stated its intention to use the testimony of Scott Steele (the owner of 3S) from a prior trial in Maryland to prove DataQuick's damages, Steele, who was present, ordered his counsel to immediately leave the hearing. During the exchange that followed, the arbitrator strongly encouraged 3S to stay and participate in the arbitration proceedings. He also explained that the proceedings would continue without 3S and, absent

its participation, he might not be able to fully understand any defenses 3S may have against DataQuick's claims. Steele and his counsel then left the arbitration hearing with their exhibits and witnesses.

The arbitration hearing proceeded, and DataQuick submitted over 200 exhibits and five witnesses during the course of the proceeding. All of the exhibits used by DataQuick were documents 3S had disclosed during discovery. DataQuick also used Steele's testimony and 3S's expert testimony from a prior case litigated in a Maryland state court, styled *Steele Software Systems Corp. v. First Union National Bank* ("*First Union*"). In that matter, 3S had sued First Union National Bank ("First Union") on a breach of contract claim. 3S alleged therein that First Union had failed to use the 3S system as frequently as required in their contract. During trial of that dispute, 3S relied on evidence regarding the total transactions that it had the capability of performing for First Union from January 1998 through December 2001. Based on the evidence, the jury awarded 3S a verdict of more than $37 million against First Union.

Following the arbitration hearing underlying these court proceedings, DataQuick submitted a post-hearing brief to the arbitrator, requesting an award in excess of $30 million. 3S elected not to submit a responsive post-hearing brief of its own, and the arbitration record was closed on June 3, 2005. In the meantime, 3S filed for an injunction against the arbitrator in the District of Maryland, seeking to enjoin him from issuing an award. The district court denied this request, and 3S thereafter filed a motion to reopen the arbitration hearing, claiming that it had not realized DataQuick was requesting damages of over $30 million. The arbitrator informed 3S that it would only reopen the hearing if 3S met certain conditions, including: paying DataQuick $195,000 in interim damages, paying DataQuick's attorney fees, waiving any right to appeal the final arbitration award, and agreeing not to seek bankruptcy protection. 3S declined to agree to these terms, and the arbitrator denied the motion to reopen.

On August 25, 2005, the arbitrator issued the Award, which underlies the district court proceedings and this appeal. In devising the Award, the arbitrator found that 3S had breached the Agreement and that Steele had deliberately misled DataQuick into believing that 3S had never achieved the amount of monthly sales necessary to trigger

a per transaction calculation of fees. The arbitrator also drew a negative inference against 3S because of its efforts to withhold information from him and DataQuick. He then determined, "[a]fter reviewing the evidence, including exhibits and testimony and the record of the First Union case, . . . that the number of fee generating transactions would result in fees of at least $10,000 per month from July 1, 1996 through December 31, 1996, $15,000 per month for 1997, $40,000 per month for 1998, $35,000 per month for 1999, $22,000 per month for 2000, $23,000 per month for 2001 and $24,000 per month for 2002." J.A. 228. As a result, the arbitrator, after making deductions for fees previously paid by 3S, awarded DataQuick the sum of $1,495,500, plus prejudgment interest of $771,051.64, on its breach of contract claim against 3S.

The arbitrator also found that 3S had been unjustly enriched by the jury's verdict in favor of 3S in the *First Union* trial. Although 3S received its award of damages in that case on the basis of projected transactions with First Union, the arbitrator found that these transactions would have used DataQuick's database. The arbitrator concluded that because 3S had "been paid for a product for which DataQuick would have been entitled to a transactional fee," DataQuick was entitled to be compensated "for those transactions under the theory of unjust enrichment." J.A. 229. He therefore awarded DataQuick ten percent of 3S's *First Union* jury verdict, minus some reductions, for an additional sum of $3,447,634. The arbitrator then awarded DataQuick additional unjust enrichment damages of $460,000 for 3S's improper use of DataQuick's database after the Agreement had been terminated. Thus, DataQuick was awarded a total of $6,174,185.64 from 3S, plus attorney's fees and costs of arbitration.

### D.

On October 19, 2005, 3S filed the underlying proceeding in the district court, seeking to vacate the Award. After a hearing on the matter, the court, by a bench ruling, upheld the Award, with the exception of the arbitrator's grant of attorney fees and costs to DataQuick. The district court's Judgment was entered on January 17, 2006. 3S has timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Judicial review of an arbitration award in federal court is "substantially circumscribed." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). In fact, the scope of judicial review for an arbitrator's decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all — the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998). Indeed, as we have emphasized, in reviewing such an award, "a district or appellate court is limited to determine whether the arbitrators did the job they were told to do — not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (internal quotation marks omitted). In assessing on appeal a district court's denial of a motion to vacate an arbitration award, we review de novo the court's legal rulings. *Patten*, 441 F.3d at 234. Any factual findings made by the district court in affirming such an award are reviewed for clear error. *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 145 (4th Cir. 1993).

III.

In order for a reviewing court to vacate an arbitration award, the moving party must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds. *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). The Federal Arbitration Act provides that a court may only vacate an arbitration award on one of the following grounds:

(1)  where the award was procured by corruption, fraud, or undue means;

(2)  where there was evident partiality or corruption in the arbitrators, or either of them;

(3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause

shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The permissible common law grounds for vacating such an award "include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Patten*, 441 F.3d at 234.

3S contends in this appeal that the district court should have vacated the Award to DataQuick under several of the permissible statutory or common law bases. Specifically, 3S asserts that (1) a portion of the Award was not drawn from the essence of the Agreement, (2) the arbitrator manifestly disregarded relevant law, (3) the Award was procured by undue means, (4) the arbitrator was partial, (5) the Award was procured by arbitrator misconduct, and (6) the arbitrator exceeded his power in making the Award. We address each of 3S's contentions in turn.[3]

A.

First, 3S contends that the portion of the Award predicted on the *First Union* jury verdict should be vacated because it cannot be rationally derived from the Agreement. As we have recognized, an arbitration award can be vacated by a district court if it "fails to draw its essence from the agreement." *Patten*, 441 F.3d at 235. Such a circumstance can arise when an arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong. *See id.* An arbitration award, however,

---

[3]3S also appeals the district court's denial of its motion in that court to compel the preparation of the arbitration hearing transcript, as well as its motion for reconsideration of the court's Judgment affirming the Award. We are content to summarily affirm those discretionary rulings.

"does not fail to draw its essence from the agreement merely because a court concluded that an arbitrator has misread the contract." *Id.* (internal quotation marks omitted); *see also U.S. Postal Serv. v. Am. Postal Workers Union, ALF-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)).

3S asserts that the *First Union* aspect of the Award was not drawn from the essence of the Agreement because it contradicts the clear language thereof. In so doing, 3S relies on two provisions of the Agreement. First, it contends that this portion of the Award contradicts the clear language of the Agreement because the arbitrator awarded damages based upon constructive sales, when the Agreement provides that 3S was to pay DataQuick only when 3S actually "accessed and billed" DataQuick's data. *See* Agreement ¶ 4.1. On this point, however, 3S ignores the Agreement's explicit provision that 3S cannot commercially exploit DataQuick's database. *See id.* ¶ 7.3. As found by the arbitrator, without DataQuick's data, 3S would not have been able to offer its services to First Union and thus would not have prevailed against First Union on its breach of contract claim. Given that 3S claimed ownership of DataQuick's data during the *First Union* litigation, the related unjust enrichment damages were justifiably drawn from the provision of the Agreement that prohibits 3S's commercial exploitation of DataQuick's data.

Next, 3S contends that the unjust enrichment aspect of the Award contradicts the clear language of the Agreement because it limits the types of damages DataQuick can recover. Specifically, the Agreement provides that "[i]n no event, shall either party be liable for any indirect, incidental or consequential damages, including, but not limited to, lost income or lost revenue." Agreement ¶ 6.6. Paragraph 6.6 of the Agreement does not, however, prohibit an award of restitution, the type of damages the arbitrator awarded for DataQuick's unjust enrichment claim. Because an award based on unjust enrichment does not contradict the clear language of the Agreement, 3S cannot meet its burden of showing that the Award is not drawn from the essence of the Agreement, and the Award cannot be vacated on this ground.

B.

3S next contends that the Award should be vacated because the arbitrator acted with a manifest disregard of the relevant law. Specifically, 3S asserts that the arbitrator (1) ignored relevant California law when it awarded both breach of contract and unjust enrichment damages, and (2) ignored 3S's valid statute of limitations defense. In evaluating whether an arbitrator has manifestly disregarded the law, we have heretofore concluded that "a court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award. Rather, appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994); *see also Dawahare v. Spencer*, 210 F.3d 666, 670-71 (6th Cir. 2000) (concluding that in order to vacate for manifest disregard of law, arbitrator must have clearly stated law and expressly chosen to ignore it).

On this aspect of its appeal, 3S first asserts that the arbitrator manifestly disregarded California law by awarding DataQuick both breach of contract and unjust enrichment damages under the Agreement. 3S contends that, under California law, these remedies are mutually exclusive. DataQuick contends, however, that 3S has not met its heavy burden of establishing that the arbitrator manifestly disregarded the relevant law. Indeed, 3S does not point to any indication in the record where the arbitrator discussed or was presented with the potentially relevant California legal principles. Nor does 3S point to any evidence that the arbitrator expressly chose to ignore such principles.

3S then asserts that the arbitrator manifestly disregarded the law by ignoring its statute of limitations defense. In its response to DataQuick's claims, 3S generally pleaded a statute of limitations defense and, at the beginning of the arbitration hearing, 3S's counsel stated that it believed some of DataQuick's damage claims to be time barred. Again, however, 3S has not presented any evidence that the arbitrator was advised of the specifics of the statute of limitations provisions and then expressly ignored them. In fact, the arbitrator may not have been made aware of such principles because 3S voluntarily left the hearing before the arbitrator had an opportunity to hear or consider 3S's affirmative defenses to DataQuick's claims. Thus, 3S

cannot meet its burden of showing that the arbitrator manifestly disregarded the law, and the Award cannot be vacated on this ground.

## C.

3S also contends on appeal that the Award should be vacated because it was procured by undue means, in that DataQuick failed to give 3S notice of its intent to seek damages of more than $170,000. The term "undue means" has generally been interpreted to mean something like fraud or corruption. *See Remmey*, 32 F.3d at 147; *see also Nat'l Cas. Co. v. First State Ins. Group*, 430 F.3d 492, 499 (1st Cir. 2005) ("The best reading of the term 'undue means' under the maxim *noscitur a sociis* ["it is known from fellows or allies"] is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either."). 3S contends that, based on DataQuick's complaint in the California court, it believed that it was only subject to a claim for damages up to the sum of $170,000. As found by the district court, however, the complaint clearly states that the claim for damages was for a minimum of $170,000. Furthermore, the arbitrator found that DataQuick would have had earlier knowledge of the potential damages award in the arbitration proceedings if 3S had not deliberately withheld the relevant information. Thus, 3S cannot meet its burden of showing a procurement of the Award by undue means, and the Award cannot be vacated on this ground.

## D.

3S next contends that the Award should be vacated because there is evidence that the arbitrator was in fact partial in favor of Data-Quick. Specifically, 3S asserts that such partiality existed and is established because the arbitrator ignored its statute of limitations defense, failed to give it an opportunity to respond, and stated that it could not attend the arbitration hearing. To establish partiality under 9 U.S.C. § 10(a)(2), 3S was obligated to "demonstrate that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 500 (4th Cir. 1999) (internal quotation marks omitted). To determine if a party has established such partiality, a court should assess four factors: "(1) the extent and character

of the personal interest, pecuniary or otherwise, of the arbitrator in the proceedings; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitrator; and (4) the proximity in time between the relationship and the arbitration proceeding." *Id.* Furthermore, "[w]hen considering each factor, the court should determine whether the asserted bias is direct, definite and capable of demonstration rather than remote, uncertain or speculative and whether the facts are sufficient to indicate improper motives on the part of the arbitrator." *Id.* (internal quotation marks omitted).

In the circumstances presented, we must also reject this appellate contention of 3S. First, 3S has not addressed any of the relevant factors in its appellate brief, nor has it presented any evidence to show that the arbitrator had an improper relationship with DataQuick. Second, the evidence that 3S does present (that the arbitrator ignored its statute of limitations defense, failed to give it an opportunity to respond, and excluded it from the hearing) either amount to misrepresentations or fail to demonstrate anything more than the fact that the arbitrator ruled against 3S on certain issues. Finally, there has been an ample showing that the arbitrator gave 3S generous leeway during the arbitration proceedings, by extending filing deadlines, accepting exhibits and witnesses after the extended deadlines had passed, and strongly encouraging 3S to participate in the arbitration proceedings. Thus, 3S is unable to meet its burden of showing that the arbitrator was partial, and the Award cannot be vacated on this ground.

### E.

3S next contends that the Award should be vacated because it was procured by arbitrator misconduct. Specifically, 3S asserts that such misconduct is shown by the arbitrator's refusal to (1) consider 3S's pertinent and material evidence, and (2) allow 3S to attend the arbitration hearing after it withdrew from the proceedings. First, under 9 U.S.C. § 10(a)(3), an arbitrator commits misconduct if he refuses "to hear evidence pertinent and material to the controversy." 3S asserts that the arbitrator refused to hear pertinent and material evidence when it denied 3S's motion to reopen the hearing. Although the arbitrator denied 3S's motion to reopen, a federal court is entitled to vacate an arbitration award only if the arbitrator's refusal to hear per-

tinent and material evidence deprives a party to the proceeding of a fundamentally fair hearing. *See UMWA v. Marrowbone Dev. Co.*, 232 F.3d 383, 388 (4th Cir. 2000) (concluding that arbitrator committed misconduct by failing to provide parties with full and fair hearing); *see also Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) ("A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.").

Although the arbitrator ultimately declined to reopen and hear 3S's evidence, the arbitrator did not commit misconduct in so doing because 3S was not deprived of a fundamentally fair hearing. First, 3S would have had an ample opportunity to present its evidence if its owner had not insisted on abandoning the arbitration hearing. In fact, the arbitrator strongly encouraged 3S to remain at the hearing to present its evidence and its defenses. Second, after the arbitration hearing was completed, the arbitrator was willing to accept and review a post-hearing brief from 3S, which it declined to submit. Finally, even though the arbitrator placed certain conditions on 3S in order to reopen the hearing, the arbitrator, under the AAA rules, was vested with broad discretion in this regard and was not obliged to reopen the hearing in any event. *See* AAA Rule R-36 ("The hearing *may* be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made." (emphasis added)). In this instance, the arbitrator gave 3S ample opportunities to present its evidence, and the Award cannot be vacated simply because 3S failed and refused to take advantage of those opportunities.

Second, 3S asserts that the arbitrator committed misconduct when it declined to allow 3S to attend the arbitration hearing. This contention also fails because the arbitrator never requested that 3S abandon the hearing. To the contrary, 3S voluntarily left the hearing after the arbitrator had strongly encouraged it to remain and present its evidence and defenses. In addition, there is no indication that 3S actually sought to attend the hearing after it withdrew from the arbitration, or that the arbitrator barred it from attending. Thus, 3S cannot meet its burden of showing arbitrator misconduct, and the Award cannot be vacated on this ground.

## F.

Lastly, 3S contends on appeal that the Award should be vacated because the arbitrator exceeded his power in making it. Specifically, 3S asserts that the arbitrator exceeded his power by (1) granting DataQuick damages for time periods outside those claimed in the state court complaint, and (2) hearing and deciding a case that should have been determined by three arbitrators instead of one.[4] In evaluating whether an arbitrator has exceeded his power, we have generally recognized that "any doubts concerning the scope of arbitrable issues as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 147 (4th Cir. 1993) (internal quotation marks omitted). First, with regard to the time frame covered by the damages award, 3S contends that, because DataQuick's complaint in the California court alleged that its contract damages began around September 2002 and its unjust enrichment damages began around December 1999, the arbitrator was not entitled to award damages to DataQuick for any contract breach or unjust enrichment that took place prior thereto. The problem with this contention is that, although DataQuick may not have specifically alleged in its complaint that contract damages occurred prior to September 2002 and that unjust enrichment damages occurred prior to December 1999, DataQuick raised these claims before the arbitrator during the hearing and in its post-hearing brief. Furthermore, 3S acknowledged that such damages were being sought when it submitted a statute of limitations defense to the arbitrator, asserting that any such damages suffered by DataQuick prior to December 1999 were time barred. Thus, the arbitrator was entitled to conclude that these claims were legitimately before him for resolution.

3S finally asserts that the arbitrator exceeded his power because the arbitration proceedings should have been heard by a panel of three arbitrators instead of by only one. 3S contends that because Data-

---

[4]3S briefly mentions on appeal that the arbitrator exceeded his power by relitigating the *First Union* judgment and granting injunctions. 3S has failed to make any showing to support these contentions, and thus they are also rejected.

Quick's actual claim was in the millions of dollars, it had the right to insist that three arbitrators hear the case, pursuant to the AAA's Complex Case Procedures. First, this contention is contrary to the arbitration provisions of the Agreement. When the Agreement discusses the appointment of an arbitrator, it uses the term in the singular, and it simply does not provide for disputes to be resolved by a panel of three arbitrators. *See* Agreement ¶ 8.4. Furthermore, we have heretofore recognized that, in such a circumstances, a court generally lacks jurisdiction to determine the number of arbitrators needed to hear and resolve an arbitration. *See Dockser v. Schwartzberg*, 433 F.3d 421, 423 (4th Cir. 2006) (concluding that when "[t]he parties have agreed that arbitrator selection should follow the rules and procedures of the" AAA, "the number of the arbitrators is a procedural question to be answered exclusively in that forum"). Thus, 3S has failed to satisfy its burden of showing that the arbitrator exceeded his power, and the Award cannot be vacated on that basis.

IV.

Pursuant to the foregoing, we affirm the district court's denial of 3S's motion to vacate the Award.

*AFFIRMED*