An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-25

Filed 1 October 2025

Durham County, No. 24CVS001522-310

SMARTSKY NETWORKS, LLC, Plaintiff,

v.

DAG WIRELESS, LTD; DAG WIRELESS USA, LLC;
LASLO GROSS, SUSAN GROSS, and DAVID GROSS,
Defendants.

Appeal by Defendants from order entered 23 August 2024 by Judge Michael J. O'Foghludha in Durham County Superior Court. Heard in the Court of Appeals 10 June 2025.

>   *Nelson Mullins Riley & Scarborough LLP, by Christopher J. Blake, for Plaintiff–Appellee.*
>
>   *Laslo Gross, Susan Gross, and David Gross, Defendants–Appellants, pro se.*

MURRY, Judge.

Laslo, Susan, and David Gross (Defendants) appeal from an order granting SmartSky Networks, LLC's (Plaintiff) petition to confirm an arbitration award and denying Defendants' motion to vacate that same award. For the reasons below, this Court affirms the trial court's order.

## I.    **Background**

In April 2019, Plaintiff and Defendants entered into a "Teaming Agreement" (Agreement) for Defendants to create an air-to-ground wireless communication network for Plaintiff.  The parties agreed to "binding arbitration" of any Agreement disputes under North Carolina law and the Commercial Rules of the American Arbitration Association (AAA).  *See, e.g.*, Com. Arb. Rules & Mediation Procs. R-57 (Am. Arb. Ass'n 2013) [hereinafter AAA R-] (amended 2023) (specifying arbitrative "[r]emedies for [n]onpayment"), https://www.adr.org/media/sfdkznhv/2025_commercialrules_web.pdf (last visited Sep. 18, 2025).

On 14 September 2020, Plaintiff submitted a demand for AAA arbitration against Defendants, claiming breach of contract. Defendants submitted a response and counterclaims. Between September 2020 and April 2021, the parties engaged in a contentious pre-hearing discovery process. Less than seven weeks from the hearing date, Defendants sought to introduce evidence of Plaintiff's alleged "hacking" of their hardware and software systems. The arbitrators declined to consider this evidence given the hearing's "imminent timing." When Defendants failed to pay their portion of the AAA fees as required by the Agreement, Plaintiff moved to strike Defendants' counterclaims with prejudice. Defendants then withdrew all counterclaims; the arbitrators ultimately deemed their withdrawal as with prejudice.

The arbitrators allowed testimony regarding the alleged "hacking" at the May 2021 hearing and ultimately ruling in Plaintiff's favor. Plaintiff prevailed over

Defendants in a final arbitration award dated 1 October 2021 (Award). Four days later, Plaintiff moved to confirm the Award under 9 U.S.C. § 9 in the Middle District of North Carolina (district court). Defendants responded by moving to vacate the Award. On 7 February 2022, the district court confirmed the Award (Confirmation Order).[1] On 13 February 2024, the Fourth Circuit reversed and remanded the Confirmation Order, interpreting the U.S. Supreme Court's decision in *Badgerow v. Walters*, 596 U.S. 1 (2022), to deprive the district court of subject-matter jurisdiction to confirm the Award under 9 U.S.C. § 9. Plaintiff petitioned for rehearing on 27 February 2024, which the Fourth Circuit denied on 13 March 2024. *See SmartSky Networks, LLC v. DAG Wireless, Ltd.*, 93 F.4th 175 (2024).

One week later, Plaintiff petitioned to confirm the Award in Superior Court, Durham County. Defendants moved to vacate or modify the Award in response. After a hearing, the trial court granted Plaintiff's petition to confirm the Award and denied Defendants' motion, contemporaneously entering a permanent injunction against Defendants "as set forth in the . . . Award." Defendants timely appealed.

## II.  **Jurisdiction**

This Court has jurisdiction to hear Defendants' appeal of a trial court's "order

---

[1]  On 7 April 2022, Defendants argued that based on the U.S. Supreme Court's decision in *Badgerow v. Walters*, 596 U.S. 1 (2022), the district court lacked subject-matter jurisdiction to confirm the Award. The district court rejected Defendants' argument, distinguishing "this action[, which] originated in federal court" based in part on federal-question jurisdiction over Plaintiff's underlying claims, from *Badgerow*, "where the action was brought to federal court only to vacate the arbitral decision."

confirming . . . an [arbitration] award." N.C.G.S. § 1-569.28(a)(3) (2023).

### III.  Analysis

Defendants argue that the trial court erred by granting Plaintiff's petition to confirm the Award and denying Defendants' motion to vacate it. Specifically, they claim that the arbitrators (1) violated N.C.G.S. § 1-569.23(a)(3) and 9 U.S.C. § 10(a)(3) by their treatment of evidence and discovery in the proceedings, and (2) exceeded their contractual authority by issuing a legal conclusion after Plaintiffs withdrew their counterclaims. Defendants further claim that (3) the one-year statute of limitations under 9 U.S.C. § 9 bars Plaintiff's petition to confirm the Award, and (4) the trial court's permanent injunction violates the specificity requirement of N.C. Rule of Civil Procedure 65(d). To "encourage the use of arbitration" that may "avoid expensive and lengthy litigation," public-policy considerations "severely limit[ ]" our "review of an arbitration award." *First Union Sec., Inc. v. Lorelli*, 168 N.C. App. 398, 400 (2005). Reviewing the trial court's findings for clear error and its conclusions *de novo*, this Court affirms the trial court's confirmation of the arbitration award for the reasons below. *See id.*

### A. No Evidentiary Misconduct

First, Defendants claim that the arbitration award must be vacated for arbitrator misconduct under both the Federal Arbitration Act (FAA) and the North Carolina Revised Uniform Arbitration Act (RUAA). *See* N.C.G.S. § 1-569.23(a)(3) (requiring state trial court to vacate award if the arbitrator "refuse[s] to consider

evidence material to the controversy[ ] or otherwise conduct[s] the hearing . . . so as to prejudice [any party's rights] substantially"); 9 U.S.C. § 10(a)(3) (allowing federal district court to vacate award if the arbitrator "refus[es] to hear . . . pertinent and material" evidence or commits "any other misbehavior" that "prejudice[s]" a party's "rights"). Defendants assert that "the arbitrators' treatment of evidence and discovery" "created a procedural catch-22 that effectively precluded [them] from presenting their defense," "fundamentally mispresented the timeline of key events," and failed "to consider material evidence that supported Defendants' unclean[-]hands defense." Because Defendants do not show a *prima facie* claim that Plaintiff "hacked" their intellectual property at any point, this Court affirms the trial court's conclusion that Defendants failed to "show[ ] adequate grounds to vacate" the Award.

### 1. *Choice of Law*

The parties' contractual choice-of-law provision "generally bind[s] . . . the interpreting court" as long as the parties "had a reasonable basis for their choice and" did not violate the "applicable law" "of the chosen State." *iPayment, Inc. v. Grainger*, 257 N.C. App. 307, 312–14 (2017). We apply only the RUAA to Defendant's claims because the Agreement mandates "binding arbitration" under the "laws of the State of North Carolina" to any "dispute, claim, or breach" "between the [p]arties aris[ing] under the Agreement." (Capitalization omitted.) The Agreement does not discuss the application of federal law in any relevant context. Thus, the RUAA controls the scope of the Agreement's obligations under North Carolina law.

Under the RUAA, "discovery during arbitration is at the discretion of the arbitrator." *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 260 (1991); *see* N.C.G.S. § 1-569.17 (allowing arbitrator to "permit any discovery [he] decides is appropriate" based on parties' "needs . . . and the desirability of making the proceeding fair, expeditious, and cost-effective"). Generally, arbitrators have "broad discretion to establish procedures for the conduct of the arbitration and . . . pre-hearing discovery." *Pinnacle Grp., Inc. v. Shrader*, 105 N.C. App. 168, 171 (1992). They may "conduct an arbitration in the manner the[y] . . . consider[ ] appropriate for a fair and expeditious disposition of the proceeding." N.C.G.S. § 1-569.15(a). This authority encompasses the "determin[ation of] the admissibility, relevance, materiality, and weight of any evidence." *Id.* Although the parties may "be heard and . . . present evidence . . . material to [the dispute's] determination," *Wildwoods of Lake Johnson Assocs. v. L.P. Cox Co.*, 88 N.C. App. 88, 94 (1987), not "every failure to receive evidence" is "misconduct requiring vacation of an arbitrator's award," *Shrader*, 105 N.C. App. at 171. A trial court may subsequently vacate an award if the arbitrator "refused to consider evidence material to the controversy[ ] or otherwise conducted the hearing" in a manner that "prejudice[d] substantially the rights of a party." N.C.G.S. § 1-569.23(a)(3).

Albeit noncontrolling, a related federal court sitting in diversity articulated in *Three S Delaware, Inc. v. Data Quick Info. Sys.*, 492 F.3d 520 (4th Cir. 2007), certain legal principles we find persuasive here. *See* Bryan A. Garner et al., *The Law of*

- 6 -

*Judicial Precedent* 164 (1st prtg. 2016) ("A well-reasoned relevant case from a neighboring jurisdiction . . . might provide persuasive authority."). In *Three S*, the Fourth Circuit held that an arbitrator who declined to re-open a completed arbitration hearing to consider the plaintiff's additional evidence "commit[ed no] misconduct in doing so" and did "not deprive [the plaintiff] of a fundamentally fair hearing" because the arbitrator gave other "ample opportunities [for the plaintiff] to present the evidence." *Three S*, 492 F.3d at 531. The *Three S* Court acknowledged that it had the authority to "vacate an arbitration award only if the arbitrator's refusal to hear pertinent and material evidence deprives a party . . . of a fundamentally fair hearing." *Id.*; *see* 9 U.S.C. § 10(a)(3) (deeming as reversible misconduct the arbitrator's refusal "to hear evidence pertinent and material to the controversy"); *cf.* N.C.G.S. § 1-569.23(a)(3) (same where the arbitrator "refuse[s] to consider evidence material to the controversy").

Here, Defendants claim that the arbitrators "procedural[ly] trap[ped]" them by allowing Plaintiff to "retroactively designate key documents as privileged," by "deny[ing] [their] requests for additional discovery" about Plaintiff's alleged "hacking," and by "rul[ing] against [them] for the resulting lack of evidence." But the arbitrators denied Defendants' prehearing motions regarding the alleged "hacking" because they were "disinclined . . . to schedule evidentiary submissions and conduct preemptive mini[-]hearings on individual claims or issues" less than seven weeks from the hearing date. The arbitrators also allowed Defendants to testify extensively

about the alleged "hacking" during the hearing, including the contents of those specific documents. After hearing testimony from each side, the arbitrators found "no evidence" that Plaintiff used Defendants' intellectual property "in an unauthorized manner." They found instead that Plaintiffs simply "overwrote [Defendants'] software after [Defendants] breached" the Agreement. The arbitrators concluded that these actions did not rise to the level of "hacking."

By consolidating all substantive issues at the hearing, the arbitrators acted within their discretion to coordinate prehearing evidentiary matters. *Prime South Homes*, 102 N.C. App. at 260. They also afforded Defendants "ample opportunities to present the evidence" at issue by allowing them to testify about the alleged hacking at the hearing itself. *Three S*, 492 F.3d at 531. Thus, this Court holds that the arbitrators did not substantially prejudice Defendants' rights by refusing to consider prehearing evidence of the alleged "hacking." *See* N.C.G.S. § 1-569.23(a)(3).

## 2. Hacking vs. Breach

Defendants also accuse the arbitrators of "misrepresent[ing] the timeline of key events" and "fundamentally prejudic[ing their] rights." Specifically, they challenge the arbitrators' finding that Plaintiff overwrote Defendants' software *after* Defendants breached the Agreement. Defendants cite Paragraph 302 of the Award to assert that Plaintiff "engaged in unauthorized access" to their computer systems starting in May 2020, nearly four months *before* Defendants "allegedly breached" in August 2020. But that paragraph mentions no date. Instead, it documents the finding

that Defendants marketed products "misappropriated" from Plaintiff, "which . . . interfered with [Plaintiff's] own marketing efforts, damaged [its] capital raising efforts, interfered with prospective [client] relationships[,] . . . and threatened [Plaintiff] with irreparable harm."

Defendants purport to identify four other instances of Plaintiff's improper "actions." Between May and August of 2020, Defendants claim that Plaintiffs (1) "[o]btained unauthorized login credentials" to Defendants' system, (2) "acknowledg[ed a] prohibition on 'reverse[-]engineering' [Defendants'] hardware and software," (3) "[p]lanned X-ray analysis" of Defendants' hardware, and (4) gave a "[b]oard presentation on overwriting [Defendants'] systems." Assuming *arguendo* the truth of Defendants' allegations, they show at most that Plaintiff had the intent and ability to enter Defendants' system, not that it actually did so. Defendants offer no evidence in support of their claim and admit that the arbitrators allowed the parties to present testimony regarding the alleged hacking claims at the hearing. Defendants failed to meet their burden to demonstrate that the arbitrators engaged in evidentiary misconduct in violation of § 1-569.23(a)(3). Thus, this Court affirms the trial court's refusal to vacate the Award on that ground.

## B. No Excess of Authority

Second, Defendants urge us to vacate the Award because the arbitrators "exceeded their authority" by concluding that Defendants voluntarily withdrew their counterclaims with prejudice. The RUAA requires a trial court to "vacate an

[arbitration] award" upon a party's motion if "an arbitrator exceeded . . . [hi]s powers." N.C.G.S. § 1-569.23(a)(4). The Agreement "bind[s]" the Parties to "a decision of the arbitration panel" and requires the arbitration proceeding to be "in accordance with" the AAA Rules The parties must also share equally "the cost of the arbitration, including the [arbitration panel's] fees and expenses." If a party purports to violate this obligation, the injured party may "request that the arbitrator take specific measures relating to [the] non-payment," which "may include . . . limiting a party's ability to assert or pursue its claim." AAA R-59.

Less than one month before the hearing, Defendants had yet to pay their half of the AAA fees as required by the Agreement. Plaintiff moved to dismiss Defendants' counterclaims with prejudice due to the nonpayment. Two days later, Defendants expressly withdrew all their counterclaims. The arbitrators found that because the Agreement could not "reasonably be read to contemplate serial or overlapping arbitrations arising from the same bundle of disputes," Defendants' withdrawal of their counterclaims was "effectively with prejudice." Defendants agreed to be bound by AAA R-59, which allowed the arbitrators to "limit[ ] [their] ability to assert or pursue [their] claim" due to nonpayment. The arbitrators' dismissal of Defendants' counterclaims with prejudice accords with the agreed-upon intent that arbitration be "final and binding." The arbitrators did not exceed their authority by dismissing with prejudice. Thus, this Court affirms the trial court's refusal to vacate the Award on this ground.

## C. Other Contentions

Finally, Defendant raises two additional arguments under inapplicable law: (1) that a one-year statute of limitations in 9 U.S.C. § 9 bars Plaintiff's petition to confirm the Award under the FAA, and (2) that the trial court's permanent injunction violates the specificity requirement of N.C. Civil Procedure Rule 65(d). N.C. R. Civ. P. 65(d) (requiring injunction order to be "specific in terms" and "reasonable [in] detail").

We decline to analyze Defendants' federal-statute-of-limitations argument because only state law governs the arbitration here. The corresponding RUAA section does not mention any time limit whatsoever, specifying only that a "party may . . . mo[ve] . . . for an order confirming the award" "[a]fter . . . receiv[ing] notice of [it]." N.C.G.S. § 1-569.22. We similarly do not apply Rule 65(d) here because our Rules of Civil Procedure only "govern the procedure" of state-trial-court "proceedings of a civil nature." N.C. R. Civ. P. 1. They do not apply to arbitration, which is governed by our RUAA. *See* N.C.G.S. § 1-569.3 (RUAA "governs an[y] agreement to arbitrate made on or after" 1 January 2004). Thus, this Court affirms the trial court's dismissal of Defendant's two remaining arguments.

## IV.   Conclusion

For the reasons discussed above, this Court affirms the trial court's order confirming the Award and denying Defendants' motion to vacate it.

AFFIRMED.

Chief Judge DILLON and Judge CARPENTER concur.

Report per Rule 30(e).