GINGISS INTERNATIONAL,
INC., Plaintiff–Appellee,

v.

Norman E. BORMET and Phyllis M.
Bormet, Defendants–Appellants.

No. 94–3694.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1995.

Decided June 26, 1995.

**330**

Marc P. Seidler, John F. Verhey (argued), Rudnick & Wolfe, Chicago, IL, for Gingiss Intern., Inc.

---

* The Honorable William D. Stiehl of the United States District Court for the Southern District of Illinois is sitting by designation.

Donald J. Townsend, Chicago, IL (argued), for Norman E. Bormet and Phyllis M. Bormet.

Before BAUER and MANION, Circuit Judges, and STIEHL, District Judge.*

BAUER, Circuit Judge.

Gingiss International, Inc. ("Gingiss") and H–K Formalwear Corporation ("H–K Formalwear") entered into a franchise agreement on December 18, 1984, under which H–K Formalwear was granted the right to operate a Gingiss Formalwear Center store in Industry, California. The franchise agreement contained an arbitration clause which provided that all disputes between the parties relating to the agreement would be subject to arbitration in Chicago under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, and the Rules of the American Arbitration Association ("AAA"), unless Gingiss elected to pursue certain claims in a judicial forum. The franchise agreement also contained a California choice-of-law provision. Norman E. Bormet and Phyllis M. Bormet were officers of H–K Formalwear,[1] and each owned one-third of the shares of the corporation. The store was managed by Mrs. Bormet's son, Howard Parks, who was also the president of H–K Formalwear and owned one-third of its shares.

Gingiss entered into a Shareholder's and Officer's Agreement with the Bormets and Parks contemporaneously with the franchise agreement. The Shareholder's and Officer's Agreement provided that the Bormets and Parks agreed to be bound by all obligations of H–K Formalwear under the franchise agreement as if each was the franchisee. The Bormets and Parks also agreed to be bound by all obligations of H–K Formalwear under a related sublease of the California store.

In December 1993, following the expiration of the franchise agreement, Gingiss initiated arbitration proceedings against H–K Formalwear, the Bormets, and Parks. Gingiss sought damages for several breaches of the

---

1. Norman Bormet was the vice-president and treasurer of H–K Formalwear, and Phyllis Bormet was the secretary.

franchise agreement and the sublease, including the failure to pay royalties and advertising fund contributions. Gingiss also sought damages for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051–1128, and its attorney's fees incurred in prosecuting an earlier unlawful detainer action against H–K Formalwear in California state court.

Gingiss' attorney sent a copy of Gingiss' arbitration demand by regular mail to the Bormets at a post office box in Old Fort, North Carolina. This was the same address to which Gingiss had previously sent correspondence to the Bormets, and the Bormets had regularly replied. The AAA sent a letter by regular mail to the same address on December 30, 1993, notifying the Bormets of the arbitration proceeding. The AAA sent three additional letters concerning the arbitration proceeding by regular mail to the Bormets at this address in January 1994. Neither Gingiss' arbitration demand nor any of the AAA's letters was ever returned as undelivered.

An arbitration hearing was held on March 30, 1994, at the AAA's offices in Chicago. The Bormets and Parks did not appear at the hearing. Gingiss, nonetheless, presented evidence in support of its claims pursuant to the AAA's Commercial Arbitration Rule 30. On April 14, 1994, the arbitrator awarded Gingiss $60,629.25 against H–K Formalwear,

the Bormets, and Parks jointly and severally. This award remains unsatisfied. The arbitrator awarded Gingiss an additional $57,-142.44 against H–K Formalwear and Parks.

Gingiss then filed this application in the district court to confirm the arbitration award rendered against the Bormets. 9 U.S.C. § 9. Jurisdiction was premised upon diversity of citizenship. The Bormets petitioned to vacate the award on several grounds. 9 U.S.C. § 10(a).[2] The district court granted Gingiss' motion for summary judgment and confirmed the award.

■■■ The Bormets assert that the arbitrator exceeded his power because the arbitrator had no jurisdiction over them. 9 U.S.C. § 10(a)(4). The Bormets point out that they were not parties to the franchise agreement, and the Shareholder's and Officer's Agreement did not contain an arbitration clause. Only parties to an arbitration agreement can be compelled to arbitrate. *Morrie Mages and Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 406 n. 1 (7th Cir.1990). The Shareholder's and Officer's Agreement incorporated the franchise agreement by reference and imposed on the Bormets all the obligations of H–K Formalwear under that agreement. Paragraph six of the Shareholder's and Officer's Agreement expressly incorporated the arbitration clause. Under federal law,[3] a subcontract with a guarantor or surety may incorporate a duty

---

**2.** Section 10(a) states as follows:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the

award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

**3.** Because the franchise agreement involved interstate commerce, the FAA applies. 9 U.S.C. §§ 1, 2; *Allied–Bruce Terminix Cos., Inc. v. Dobson*, —— U.S. ——, ——, 115 S.Ct. 834, 841–43, 130 L.Ed.2d 753 (1995). The FAA authorizes federal courts to create a federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the FAA, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 and n. 32, 103 S.Ct. 927, 941–42, and n. 32, 74 L.Ed.2d 765 (1983); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 707 (7th Cir.1994), unless the parties have agreed to submit the question of arbitrability to arbitration, which Gingiss and the Bormets have not done. *First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, ——––——, 115 S.Ct. 1920, 1923–24, 131 L.Ed.2d 985 (1995).

to arbitrate by reference to an arbitration clause in a general contract. *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 (4th Cir.1985); *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984). The Bormets therefore were obligated to arbitrate Gingiss' claims pursuant to the arbitration clause.

■ The Bormets further assert that the arbitrator exceeded his power because, under the terms of the franchise agreement, the arbitrator had no jurisdiction over Gingiss' Lanham Act claims and its claim for attorney's fees incurred in prosecuting the unlawful detainer action. An arbitration award should be vacated under 9 U.S.C. § 10(a)(4) if "the arbitrator exceeded the powers delegated to him by the parties." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). The arbitration clause stated that "all disputes and claims relating to any provision" of the franchise agreement were subject to arbitration unless Gingiss elected to pursue certain claims set forth in the agreement in a judicial forum, including Lanham Act claims. H–K Formalwear also agreed to pay Gingiss' attorney's fees incurred in seeking injunctive relief against H–K Formalwear upon termination of the agreement. The franchise agreement provided Gingiss with the right, but not the obligation, to litigate rather than arbitrate these claims. And Gingiss did not waive these claims by prosecuting the unlawful detainer action in California state court because that action involved different issues.

■ The Bormets, relying on the "American Rule" for attorney's fees, argue that the arbitrator had no authority to award Gingiss its attorney's fees incurred in the arbitration. Although it is an open question in this circuit whether the "American Rule" extends to arbitration, *Eljer*, 14 F.3d at 1257, the arbitrator's award was well within his authority. The Shareholder's and Officer's Agreement imposed on the Bormets all the obligations of H–K Formalwear under the franchise agreement. Section 16(G) of the franchise agreement authorized the prevailing party to recover its attorney's fees incurred in any action "to enforce this Agreement in a judicial or arbitration proceeding." The arbitrator also relied on Section 1117 of the Lanham Act, which permits recovery of attorney's fees "in exceptional cases." 15 U.S.C. § 1117(a). Having determined that the attorney's fees award was within the arbitrator's authority, we defer to his interpretation of law and findings of fact in making the award. *Eljer*, 14 F.3d at 1254, 1257.

■ The Bormets contend that the arbitration award should be vacated because they did not receive proper notice of the arbitration proceedings. We have repeatedly held that 9 U.S.C. § 10(a) provides the exclusive grounds for setting aside an arbitration award under the FAA. *E.g., Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir.1994); *Eljer*, 14 F.3d at 1256; *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 267 (7th Cir.1988) (collecting cases). Inadequate notice is not one of these grounds, and the Bormets' claim therefore fails.

■ To the extent that the Bormets are asserting that the arbitrator committed misconduct by failing to notify them of the arbitration, 9 U.S.C. § 10(a)(3), their argument is without merit. Under the AAA's Commercial Arbitration Rule 40, notice "may be served on a party by mail addressed to the party or its representative at the last known address." Gingiss sent a copy of its arbitration demand by regular mail to the Bormets at their last known address, a post office box in Old Fort, North Carolina, and the AAA sent four letters by regular mail to the Bormets at this address. None of these notices was ever returned as undelivered. The Bormets nevertheless claim that they did not receive any of these notices.

■ The Bormets had no right under the franchise agreement to receive actual notice of the arbitration. Rule 40 does not require that notice be served by certified or registered mail. Although the Bormets point out that both Illinois and California state law require notice by registered mail or personal service, 710 ILCS 5/5(a); Cal Code Civ.Proc. § 1282.2(a)(1), these laws are inapplicable. The parties expressly agreed in the arbitration clause that the AAA's Rules would gov-

ern in the arbitration proceeding. *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989) (the parties may specify by contract the rules under which arbitration will be conducted). The Bormets' reliance on section eighteen of the franchise agreement, which provided that "[a]ll written notices permitted or required to be delivered by the provisions of this Agreement" shall be delivered by hand or by registered or certified mail, is also misplaced. "[A] document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995). Section eighteen, by its terms, applied only to notices which were required to be sent under the franchise agreement, such as default or termination notices. The arbitration clause, which is contained in section sixteen of the agreement, governed the notice procedures in the arbitration.

■■■ The Bormets next contend that the arbitration award "was procured by corruption, fraud, or undue means," 9 U.S.C. § 10(a)(1), because Gingiss caused an indispensable party, Howard Parks, to be absent from the arbitration hearing. In order to vacate the award on these grounds, the Bormets must demonstrate that the corruption, fraud, or undue means was (1) not discoverable upon the exercise of due diligence prior to the arbitration; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir.1992) (citation omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 970, 122 L.Ed.2d 126 (1993). On March 30, 1994, the date of the hearing, Parks was required by a municipal court order to attend a judgment-debtor's proceeding in Glendale, California, in connection with the unlawful detainer action brought by Gingiss against H–K Formalwear. Neither Parks nor H–K Formalwear requested a continuance of the judgment-debtor's proceeding from the California municipal court or a postponement of the arbitration hearing from the arbitrator because of this scheduling conflict. The Bor-

mets also did not request that the arbitrator postpone the hearing because of Parks' absence. The Bormets thus have failed to show that Parks' absence was procured by Gingiss or could not have been prevented by Parks or the Bormets.

■■■ The Bormets' remaining claims that (1) their liability to Gingiss under the Shareholder's and Officer's Agreement terminated on October 31, 1993; and (2) Gingiss failed to prove any damages caused by the Bormets, are nothing more than thinly veiled attempts to obtain appellate review of the arbitrator's decision, which is not permitted under the FAA. *E.g., United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987); *Widell v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994); *Baravati*, 28 F.3d at 706; *Eljer*, 14 F.3d at 1254. Factual or legal errors by arbitrators—even clear or gross errors—"do not authorize courts to annul awards." *Widell*, 43 F.3d at 1151; *accord Misco*, 484 U.S. at 38, 108 S.Ct. at 371. With respect to the Bormets' proof of damages claim, moreover, we held in *Eljer* that insufficiency of the evidence is not a ground for setting aside an arbitration award under the FAA. *Eljer*, 14 F.3d at 1256. The Bormets also briefly assert that the arbitrator deprived them of due process of law by failing to render the award in a "just, independent and deliberate manner." This argument was not raised in the district court and therefore has been waived. *E.g., United States v. Rode Corp.*, 996 F.2d 174, 179 (7th Cir.1993). We add that if the Bormets are merely casting their other challenges to the arbitration award in constitutional terms, their argument fails for the reasons we have discussed. The arbitration award is valid under 9 U.S.C. § 10(a), and the judgment of the district court confirming the award is therefore

AFFIRMED.