116 F.3d 1482
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Elizabeth FLESSAS, Plaintiff-Appellant,
v.
SHOWA DENKO K.K., Showa Denko America, Inc., Walgreen Co.,
Nutrition Research Labs, Inc., and Doe Companies #
1-50, inclusive, Defendants-Appellees.
 No. 93-C-70.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 23, 1997.*
Decided June 24, 1997.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 93-C070; Aaron E. Goodstein, Magistrate Judge.
 Before COFFEY, FLAUM, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Elizabeth Flessas filed an action in a Wisconsin state court in December 1992, alleging that the defendants manufactured and sold L-tryptophan (an amino acid) which caused her to develop eosinophilia myalgia syndrome (EMS). The action was removed to federal district court on the basis of diversity of citizenship and an amount in controversy over $50,000. See 28 U.S.C. §§ 1332, 1441(a).[1] In March 1996, the parties entered into an agreement to arbitrate Flessas's claims. The arbitrator found in favor of defendants and awarded Flessas no compensatory damages. Pursuant to a confidential "high-low" agreement executed prior to arbitration, Showa Denko[2] agreed to pay a minimum recovery.[3] This money was deposited with the clerk of the district court pending a confirmation hearing. After the hearing, the magistrate judge confirmed the arbitration award, authorized the distribution of funds to the law firms that had represented Flessas during the case, and dismissed the action with prejudice. Flessas, now proceeding pro se and in forma pauperis, appeals.
 
 
 2
 The arbitration agreement provided that the award would not be subject to review by any court "except as may be provided by Wisconsin statute." The relevant statute is Wis.St. § 788.10, which provides several grounds for vacating an award.[4] The list of grounds includes the following: 1) "the award was procured by corruption, fraud or undue means"; 2) "there was evident partiality or corruption in the arbitrator[ ]"; 3) "the arbitrator[ ][was] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, [or was guilty] of any other misbehavior by which the rights of any party were prejudiced"; 4) the arbitrator[ ] exceeded [his] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Wis.St. 788.10(1).[5] In order to get the award overturned, Flessas was required to present clear and convincing evidence that the award was invalid. Flexible Mfg. Sys., 86 F.3d at 97 (citing DeBaker v. Shah, 533 N.W.2d 464, 468 (Wis.1995)). The arbitrator's decision cannot be overturned for " 'mere errors of law or fact, but only when perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law or if the award itself is illegal or violates strong public policy.' " Flexible Mfg. Sys., 86 F.3d at 98-99 (quoting City of Madison v. Madison Prof'l Police Officers Ass'n, 425 N.W.2d 8, 11 (Wis.1988)) (internal quotation omitted). In considering the magistrate judge's decision to confirm the arbitration award, we review questions of law de novo and findings of fact for clear error. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995).
 
 
 3
 Several of Flessas's arguments regard alleged deficiencies in the representation and advice of her attorneys. She claims that her initial counsel, the Houston law firm of Turner Branch, delayed the resolution of her case by "non-compliance and failure to file discovery information," and eventually "abandoned" her, requiring her to seek new counsel. She also alleges that her subsequent counsel, the New Orleans law firm of Silvestri & Massicot, threatened to "abandon" her unless she assented to the arbitration agreement, "misinformed [her] about the numerical figures of the agreement," and also filed an "improper" application for distribution of funds despite allegedly withdrawing its services the day before[6] and despite Flessas's objections.
 
 
 4
 We cannot allow Flessas to avoid the arbitration agreement by blaming her counsel; the defendants should not have to face additional proceedings in this case because of alleged errors and misconduct for which they were not responsible. See Deppe v. Tripp, 863 F.2d 1356, 1361 (7th Cir.1988) ("Requiring a non-erring party to bear the burden of his opponent's errors may not be reasonable in many circumstances and in fact may constitute a miscarriage of justice."). As to the distribution of funds, the magistrate judge allowed Flessas to present arguments against her counsel's application. Flessas does not make a persuasive argument that the magistrate judge erred in his disbursement of funds; she instead makes a conclusory allegation that Turner Branch's "failures of timely filing served primarily to prolong the litigation" and an inaccurate allegation that Turner Branch's inaction resulted in the entry of summary judgment against her (when, in fact, none of the defendants received summary judgment).
 
 
 5
 According to Flessas, defendants Showa Denko and Walgreen misrepresented and concealed information that would have helped to show that the L-tryptophan that she ingested was manufactured by Showa Denko. Flessas asserts that this alleged deception made her case seem considerably less viable and increased the pressure on her to agree to arbitration. To vacate an arbitration award on the basis of fraud, Flessas must show that the fraud was "(1) not discoverable upon the exercise of due diligence prior to the arbitration; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence." Gingiss Int'l, Inc. v. Bormet, 58 F.3d 328, 333 (7th Cir.1995) (citation omitted). Even assuming that Flessas has satisfied the first and third of these criteria, it is plain that she has not satisfied the second. The arbitration agreement specifically provided that Flessas did "not have to establish the source or cause of her alleged EMS to recover compensatory damages in this proceeding." The only issues decided at the arbitration were whether Flessas developed EMS and whether she sustained or would sustain compensatory damages proximately caused by EMS. Thus, the evidence described by Flessas, which concerns only the source or cause of her alleged EMS, was completely immaterial to the arbitration and cannot be used to overturn the award.
 
 
 6
 Flessas claims that the arbitrator was biased in favor of the defendants because he knew and was friendly with one of the defendants' witnesses. She also claims that the arbitration hearing was conducted in violation of due process, because the evidence was neither recorded nor transcribed. These contentions were not raised by Flessas in the district court and therefore have been waived. Id.
 
 
 7
 Finally, the record does not support Flessas's contention that the magistrate judge denied her a sufficient opportunity to present her arguments against the award. At the confirmation hearing, Flessas did not ask to call anyone as a witness on her behalf. The magistrate judge allowed Flessas to speak at length during the hearing. Towards the end of the hearing, the magistrate judge asked her if she had "[a]nything further," to which she responded by making additional statements. In sum, Flessas received ample opportunity to raise her arguments at the hearing.
 
 
 8
 The judgment is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 The case was then delayed for a year while it was transferred to and eventually back from the District of South Carolina by the judicial panel on multidistrict litigation. See 28 U.S.C. § 1407. A few months after the case returned to the Eastern District of Wisconsin, the parties consented to proceed before Magistrate Judge Goodstein. See 28 U.S.C. 636(c)
 
 
 [2]
 In this order, "Showa Denko" is used to refer collectively to defendants Showa Denko K.K. and Showa Denko America, Inc
 
 
 [3]
 The "high-low" agreement was filed under seal with the district court. It provided that Flessas would be guaranteed a specified minimum recovery even if the arbitrator's ruling fell below that figure, but could not receive more than a specified maximum recovery
 
 
 [4]
 The grounds listed in Wis.Stat. § 788.10 are virtually identical to those listed in 9 U.S.C. § 10, a provision of the Federal Arbitration Act (FAA). Flexible Mfg. Sys. Pty Ltd. v. Super Prods. Corp., 86 F.3d 96, 99 (7th Cir.1996)
 
 
 [5]
 Flessas does not cite this statute or any other statute or case authority in her appellate argument. She also fails to support most of her contentions with citations to the record. The argument portion of an appellant's brief must contain citations to the authorities, statutes, and parts of the record relied on. Fed.R.App.P. 28(a)(6). Were Flessas represented by counsel, we would likely dismiss her appeal for failure to support her arguments. See McCottrell v. EEOC, 726 F.2d 350, 351 (7th Cir.1983). However, because we may hold a pro se litigant's briefs to a lower standard than those prepared by counsel, we shall address the arguments that we can identify in Flessas's briefs. See id.; Hilgeford v. Peoples Bank, 776 F.2d 176, 178 (7th Cir.1985) (per curiam), cert. denied, 475 U.S. 1123 (1986)
 
 
 [6]
 The record does not contain any documents showing that Silvestri & Massicot attempted to withdraw its services from Flessas