PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CHOICE HOTELS INTERNATIONAL,
INCORPORATED,
          *Plaintiff-Appellee,*

          v.                              No. 05-1979

SM PROPERTY MANAGEMENT, LLC;
SAY-HAI CUN; MAY D. CUN,
          *Defendants-Appellants.*

CHOICE HOTELS INTERNATIONAL,
INCORPORATED,
          *Plaintiff-Appellant,*

          v.                              No. 06-1698

SM PROPERTY MANAGEMENT, LLC;
SAY-HAI CUN; MAY D. CUN,
          *Defendants-Appellees.*

CHOICE HOTELS INTERNATIONAL,
INCORPORATED,
          *Plaintiff-Appellee,*

          v.                              No. 06-1812

SM PROPERTY MANAGEMENT, LLC;
SAY-HAI CUN; MAY D. CUN,
          *Defendants-Appellants.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Roger W. Titus, District Judge.
(CA-04-1774-RWT-8)

Argued: December 6, 2007

Decided: February 28, 2008

Before NIEMEYER and TRAXLER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion, in which Judge Niemeyer joined. Judge Traxler wrote a sepa-
rate opinion concurring in part and dissenting in part.

---

**COUNSEL**

Onkar Nath Sharma, SHARMA LAW GROUP, Silver Spring, Mary-
land, for SM Property Management, L.L.C., Say-Hai Cun, and May
D. Cun. Jeremy W. Schulman, SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A., Rockville, Maryland, for Choice Hotels
International, Incorporated.

---

**OPINION**

HAMILTON, Senior Circuit Judge:

Below, Franchisor Choice Hotels International (Franchisor) sought
to confirm a $264,305.02 arbitration award (the Arbitration Award)
obtained by default against S.M. Property Management, L.L.C., Say-
Hai Cun, and his wife May Duong Cun (collectively Franchisees). In
response, Franchisees moved to vacate the arbitration award for lack
of notice. The district court declined to confirm the arbitration award
and granted Franchisees' motion to vacate. Franchisor appealed. We
affirm.

Franchisees moved to recover attorney's fees and costs as prevail-
ing parties under terms of the franchise agreement with Franchisor.

The district court denied the motion, and Franchisees noted a cross-appeal of such denial. We affirm on this issue also.

I.

On February 18, 2000, the parties executed a franchise agreement (the Franchise Agreement) whereby the Franchisees had the right to operate a hotel located at 450 Memorial Drive, Chicopee, Massachusetts (the Hotel) as a Comfort Inn. Under the Franchise Agreement, the Hotel was subject to periodic inspections in order to ensure compliance with Franchisor's mandatory quality assurance standards. According to an affidavit in the record by May Duong Cun, she and her husband moved from Kentucky to Massachusetts in February 2000 to run the Hotel.

Of relevance to the present appeal, the definitional section of the Franchise Agreement provided that the term "'Designated Representative' means your representative for matters about this Agreement." (J.A. 7). Also of relevance to the present appeal, Section 15 of the Franchise Agreement required that "[a]ll notices required or permitted under this Agreement must be in writing, must be . . . mailed by registered or certified mail, return receipt requested . . . to you at the Designated Representative's address." (J.A. 15). The same section provided that Franchisees "may change the Designated Representative by written notice to" Franchisor. *Id.*

At the time the parties executed the Franchise Agreement on February 18, 2000, it listed Daniel T. Li (Li) as the Franchisees' Designated Representative with an address in Ocean Township, New Jersey. Li brokered the deal between the parties culminating in the Franchise Agreement. In a letter dated February 20, 2000 and addressed to Franchisor, Li requested Franchisor to "please direct all future correspondences, bills, circular notices and all matters to the current owner Mr. Say Hai Cun or May Cun at the Comfort Inn, 450 Memorial Drive, Chicopee, Massachusetts 01020. My position of contact representative ends here." (J.A. 457).

Approximately a year and a half later, Elaine Bracci, General Manager of the Hotel, sent a letter to Lisa Collins, Senior Paralegal of Franchisor, requesting on behalf of the Franchisees that Franchisor

"remove the name of Daniel T. Li as licensee rep for MA 405 and substitute the names of May D. Cun and Say Hai Cun." (J.A. 459). Approximately two weeks later, Collins sent a responsive letter addressed to Franchisees at the Hotel address, acknowledging their intentions to change the Designated Representative under the Franchise Agreement, but instructing that they do so by completing the enclosed "Change of Designated Representative Form," and that "[o]nly the signatures of SM Property Management, L.L.C., Say-Hai Cun and May Duong Cun will make this change effective."[1] (J.A. 460).

Franchisor received the completed form, dated July 21, 2001, listing Elaine Bracci as the new Designated Representative and the Hotel address as the new address for such representative. Elaine Bracci had signed the form on behalf of S.M. Property Management, L.L.C., in her capacity as General Manager, while Say-Hai Cun and May Duong Cun had signed in their individual capacities. We will refer to this form as the July 21, 2001 Designated Representative Form.

On July 25, 2001, Collins responded by letter again to the Hotel address.[2] She expressly acknowledged receipt of the July 21, 2001 Designated Representative Form, but informed the Franchisees that she could not accept the signature of Elaine Bracci, as General Manager on behalf of S.M. Property Management, L.L.C. and that "[a]n authorized officer must sign on behalf of SM." (J.A. 463). Collins enclosed another blank Change of Designated Representative Form. Franchisees returned such form completed per Collins' instructions regarding an authorized signature on behalf of S.M. Property Management, L.L.C. (May Duong Cun signed in this regard), except that, although the form listed "Elaine Bracci, G.M.," as the new Designated Representative, the "New Address for New Designated Representative" section was inadvertently left blank.[3] (J.A. 464). Each signature

---

[1]The copy of this letter in the record shows the following scratched through with pen marks: "Attn: Mr. Daniel T. Li." (J.A. 460). Also, in the greeting part of the letter, "Mr. Li" is scratched through following "Dear." *Id.*

[2]This time the references to Mr. Li were left intact.

[3]The July 21, 2001 Designated Representative Form listed the Hotel address.

was dated August 2, 2001. We will refer to this form as the August 2, 2001 Designated Representative Form. Franchisor has never seriously disputed during this litigation that the series of letters and forms beginning with Elaine Bracci's July 2, 2001 letter and ending with the August 2, 2001 Designated Representative Form effectively changed the Franchisees' Designated Representative under the Franchise Agreement.

After Franchisees began operating the Hotel as a Comfort Inn, Franchisor concluded that Franchisees failed to meet its minimum quality assurance standards and had violated other terms of the Franchise Agreement. Franchisor formally notified Franchisees in writing of the violations by letter dated October 15, 2001, addressed to Daniel Li at his New Jersey address. Thereafter, on January 11, 2002, Franchisor notified Franchisees by letter addressed to Elaine Bracci at the Hotel address that it was terminating Franchisees' rights to operate the Hotel under the Comfort Inn franchise due to Franchisees' failure to cure the perceived violations (the Notice of Termination). The Notice of Termination also demanded that Franchisees pay Franchisor $18,812.03, which Franchisor claimed Franchisees owed it under the terms of the Franchise Agreement. The Notice of Termination was signed by Kevin M. Rooney, Associate General Counsel for Franchisor.

On August 28, 2003 and September 8, 2003, James G. Healy, Assistant General Counsel for Franchisor, sent the Franchisees letters to the attention of Elaine Bracci at the Hotel address regarding Franchisor's claims against Franchisees for liquidated damages under the Franchise Agreement. The September 8, 2003 letter stated that Franchisees owed Franchisor $255,196.81 in liquidated damages arising from termination of the Franchise Agreement.

On June 9, 2004, Franchisor filed this diversity action in the district court against Franchisees seeking, *inter alia*, the same $255,196.81 in liquidated damages. The details of the service of process with respect to this action are relevant to the issues on appeal.

A deputy sheriff for Hampden County, Massachusetts attempted to serve the summons and complaint on May Duong Cun at 384 Stony Hill Road, Wilbraham, Massachusetts. Although the parties dispute

whether she lived there in June 2004, the parties do not dispute that May Duong Cun actually accepted service of process with respect to this action at the Hampden County Sheriff's Office in Springfield, Massachusetts, in response to a business card left by the deputy sheriff at the Stony Hill Road address.[4]

With respect to S.M. Property Management, L.L.C., and Say-Hai Cun, each summons listed 3525 Schaffner Drive, Louisville, Kentucky as the party's address.[5] The actual affidavits of service by the Jefferson County, Kentucky deputy sheriff do not specify the actual location of service, only the fact of personal service in Jefferson County, Kentucky on Say-Hai Cun.

Once in federal court, Franchisees, *inter alia*, moved to dismiss the action based upon Franchisor's failure to submit the dispute to arbitration as called for in Section 22 of the Franchise Agreement (the Arbitration Clause). In relevant part, the Arbitration Clause provided:

> **[A]ny controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, including any claim that this Agreement or any part of this Agreement is invalid, illegal, or otherwise voidable or void, as well as any claim that we violated any laws in connection with the execution or enforcement of this Agreement, will be sent to final and binding arbitration before . . . the American Arbitration Association . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . . The arbitrator will apply the substantive laws of Maryland, without reference to its conflict of laws provision . . . . Judgment on the arbitration award may be entered in any court having jurisdiction. If any party fails to appear at any properly noticed arbitration proceeding, an award may**

---

[4]According to an affidavit by May Duong Cun executed on August 6, 2005, she moved out of the house located at 384 Stony Hill Road, Wilbraham, Massachusetts in January 2004.

[5]Although the record is unclear on the details, it appears that for some period of time, the Cuns resided at this address in Kentucky. The Cuns sold the property at this address on August 23, 2004.

**be entered against the party, notwithstanding its failure to appear. Any arbitration will be conducted at our headquarters office in Maryland.**

(J.A. 18-19).

On November 10, 2004, the district court denied Franchisees' motion to dismiss, but nonetheless, stayed the litigation and ordered the parties to proceed to arbitration in accordance with the terms of the Arbitration Clause. Approximately one month later, Franchisor sought to initiate arbitration proceedings against Franchisees before the American Arbitration Association (the AAA).

Notably, R-39(a) of the Commercial Arbitration Rules of the AAA provided, in relevant part:

R-39. Serving of Notice

(a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(effective July 1, 2003).

In the completed AAA "Demand for Arbitration" forms that Franchisor submitted to the AAA with respect to each Franchisee, Franchisor did not list Elaine Bracci as the Designated Representative under the Franchise Agreement, nor the Hotel Address. (J.A. 273). Rather, the Demand For Arbitration form with respect to May Duong Cun listed 384 Stony Hill Road, Wilbraham, Massachusetts as the only contact address with no party listed next to the part of the form asking for the "Name of Representative." (J.A. 275). The Demand For Arbitration Form with respect to Say-Hai Cun listed 3525 Schaffner

Drive, Louisville, Kentucky as the only contact address also with no party listed next to the part of the form asking for the "Name of Representative." (J.A. 274). With respect to S.M. Property Management, L.L.C., the Demand For Arbitration Form listed 1718 West Jefferson Street, Louisville, Kentucky as its address with "Say-Hai Cun, Member" listed as "Name of Representative" and 3525 Schaffner Drive, Louisville, Kentucky listed as "Representative's Address." (J.A. 273).

Franchisor and AAA sent May Duong Cun copies of the Demand For Arbitration and arbitration hearing notices only to the Stony Hill Road, Wilbraham, Massachusetts address. Franchisor and AAA sent S.M. Property Management, L.L.C. and Say-Hai Cun copies of their respective Demands For Arbitration and arbitration hearing notices to the Schaffner Drive, Louisville, Kentucky address. Although the assigned arbitrator (the AAA Arbitrator) ordered AAA's case administrator to contact the Franchisees at their last known telephone numbers, the record is devoid of evidence that such telephone calls were ever made.

The arbitration proceeded on the merits in the Franchisees' absence. On July 8, 2005, the AAA Arbitrator rendered his decision in favor of Franchisor in a two-page document entitled "AWARD OF ARBITRATOR." (J.A. 276). In it, the AAA Arbitrator made two references to the issue of notice to the Franchisees regarding the arbitration proceedings. First, in the first paragraph, the AAA Arbitrator stated, *inter alia*, that "having been designated in accordance with the arbitration agreement . . . and the Respondents having failed to appear after due notice by mail in accordance with the Rules of the American Arbitration Association, [I] hereby, AWARD, as follows: . . . ." *Id.* Second, under the heading "*Procedural Matters*," the AAA Arbitrator stated: "Choice filed its arbitration demand on December 14, 2004. Respondent has not filed any pleadings in this arbitration. Proper service of the Choice Demand and notices of a pre-hearing scheduling conference and the hearing was made by the AAA." *Id.* Ultimately, the AAA Arbitrator awarded Franchisor $264,305.02. Of that amount, $246,765.60 represented liquidated damages under the Franchise Agreement.

On July 29, 2005, Franchisor moved in the district court to reopen its case against Franchisees and to confirm the Award of Arbitration.

On August 9, 2005, before Franchisees had filed any opposition papers, the district court entered an order confirming the Arbitration Award. On August 12, 2005, Franchisees timely moved to vacate the Arbitration Award (Motion to Vacate), arguing principally that they never received notice of the arbitration proceedings. On October 11, 2005, the district court vacated its August 9, 2005 order and set the matter for hearing. At the conclusion of such hearing on March 6, 2006, the district court stated that, with respect to the notice issue, it

> d[id] not believe that the AAA [A]rbitrator was resolving anything other than that notice was sent to the last known address according to the records of [Franchisor], and the last known address according to the records of [Franchisor] as used by Mr. Rooney was the Chicopee, Massachusetts address. So, the address supplied by [Franchisor], although they may have been well intentioned, apparently did not work.
>
> Had they sent it to the address of the hotel — and although I don't think they're legally required to send a copy to Mr. Sharma,[6] we perhaps would not be in the predicament we're in today, because this is a hotel that's not a moving target. It's a fixed target sitting there on Memorial Drive in Chicopee, Massachusetts, which is not too hard to go up there and locate the people running the hotel and say, here. Or at least send it to them at that address.
>
> Accordingly, I conclude that the arbitrator did not have effective service, that the resolution of the issue he had in front of him was not the issue I have in front of me, and that is [Franchisor] didn't give the right address. Accordingly, I will vacate and set aside the arbitrator's award.

---

[6]Onkar Sharma represented the Franchisees when the district court stayed the case and ordered arbitration. He also represented them in the district court in their effort to oppose the Franchisor's motion to confirm and their effort to vacate the Arbitration Award. He also represents the Franchisees in the present appeal.

(J.A. 360-61) (footnote added).

On March 8, 2006 the district court entered an order denying Franchisor's motion to confirm the Arbitration Award while simultaneously vacating it. Franchisor filed a motion for reconsideration, and Franchisees filed a motion for attorney's fees and costs. The district court denied both motions. Both sides have appealed.

## II.

In its appeal, Franchisor seeks reversal of the district court's order granting Franchisees' motion to vacate the Arbitration Award. According to Franchisor, the district court lacked authority to second guess the finding of the AAA Arbitrator that Franchisees were properly notified of the arbitration proceedings in accordance with AAA Commercial Rule R-39(a).

Our authority to review the arbitration award at issue, like the authority of the district court to do the same, is "substantially circumscribed." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). "In fact, the scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all-the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Three S Delaware, Inc. v. Dataquick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (citation and internal quotation marks omitted).

"In order for a reviewing court to vacate an arbitration award, the moving party must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds." *Id.* The Federal Arbitration Act, 9 U.S.C. § 2 *et seq.*, provides that a court may only vacate an arbitration award on one of the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10(a).

"The permissible common law grounds for vacating such an award . . . include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Patten*, 441 F.3d at 234. We have held that an arbitration award fails to draw its essence from the agreement at issue "when an arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong." *Three S Delaware, Inc.*, 492 F.3d at 528. However, an arbitration award "does not fail to draw its essence from the agreement merely because a court concluded that an arbitrator has misread the contract." *Id.* (internal quotation marks omitted). In this regard, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (citation and internal quotation marks omitted). All parties correctly agree that we review the district court's legal conclusions in this case *de novo* and its findings of fact for clear error. *Three S Delaware, Inc.*, 492 F.3d at 527.

Ever mindful of our circumscribed appellate role when reviewing an arbitration award, we agree with Franchisees' position that the Arbitration Award does not draw its essence from the Franchise Agreement, and therefore, the district court acted properly in vacating it. The Arbitration Clause in the Franchise Agreement provided that the parties' disputes would be arbitrated before the AAA in accordance with the Commercial Rules of the AAA. AAA Commercial Rule R-39(a) permitted notice of the initiation of the arbitration pro-

ceedings to be sent by mail: (1) to the Franchisees at their last known respective addresses; (2) to the respective representatives of the Franchisees at their last known respective addresses; or (3) by personal service. However, it is abundantly clear that, by way of the Franchise Agreement's definition of the term Designated Representative ("your representative for matters about this Agreement", (J.A. 7)), and the Franchise Agreement's Section 15 directing that "*[a]ll notices required or permitted under this Agreement must be in writing, must be personally delivered or mailed* by registered or certified mail, return receipt requested, or by a nationally recognized courier service . . . *to you at the Designated Representative's address*," (J.A. 15) (emphasis added), the parties contractually provided that, for purposes of AAA Commercial Rule R-39(a), the address of the Designated Representative would be considered the last known address of either an individual party or his representative. Indeed, AAA Commercial Rule R-1 permitted the parties to modify the operation of AAA Commercial Rule R-39(a) in this manner. AAA Commercial Rule R-1 provided that "[t]he parties, by written agreement, may vary the procedures set forth in these rules." (effective July 1, 2003). Moreover, the Arbitration Clause expressly contemplated that an arbitration award be entered against a party to the Franchise Agreement, notwithstanding its failure to appear, only if the party was properly noticed about the arbitration proceeding. (J.A. 19) ("**If any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against the party, notwithstanding its failure to appear.**"). Here, the Franchisees were not properly noticed about the arbitration proceedings because no notice was ever sent to the Franchisees' Designated Representative, *i.e.*, Elaine Bracci, at the Hotel address.

We hold that the Arbitration Award, having been made without notification of the initiation of arbitration proceedings being sent to the Franchisees' Designated Representative, as required by the Franchise Agreement, did not draw its essence from the Franchise Agreement. In reaching this holding, we rely not only upon our just stated analysis, but also upon the state of the appellate record. First, there is no evidence in the record that the provisions of the Franchise Agreement pertaining to the parties' Designated Representatives were ever brought to the attention of the AAA Arbitrator. Indeed, the AAA Arbitrator makes absolutely no mention of the Designated Represen-

tative provisions in his decision. Second, there is no evidence that the AAA Arbitrator questioned Franchisor in any critical manner about the validity, for notice purposes, of the addresses that it provided as Franchisees' last known addresses (*i.e.*, 3525 Schaffner Drive, Louisville, Kentucky for S.M. Property, L.L.C. and Say-Hai Cun and 384 Stony Hill Road, Wilbraham, Massachusetts for May Duong Cun).[7] Third, the record is devoid of evidence to contradict the Franchisees' sworn assertions that they never received notice of the arbitration proceedings until after the AAA Arbitrator had issued the Arbitration Award. Fourth, the fact that Franchisor made Franchisees jump through so many hoops in order to change the name and address of their Designated Representative from Mr. Li in New Jersey to Elaine Bracci at the Hotel address unequivocally shows that Franchisor understood the legal significance of the Designated Representative as the recipient of all notices due the respective parties as related to disputes regarding the Franchise Agreement. Fifth, on January 11, 2002, nearly three years prior to Franchisor's Demands for Arbitration, Franchisor sent the Notice of Termination to Elaine Bracci at the Hotel, thus explicitly acknowledging her status as Designated Representative of the Franchisees and the Hotel address as the designated address to contact her. And Sixth, Franchisor continued to send demand letters for liquidated damages under the Franchise Agreement to the Hotel address and to the attention of Elaine Bracci through September 2003.

In support of its position that the district court committed reversible error by vacating the Arbitration Award, Franchisor relies heavily upon the Seventh Circuit's decision in *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328 (7th Cir. 1995). The facts of *Gingiss* are, in certain respects, analogous to those of the present appeal. As here, a franchise agreement was at issue in *Gingiss*. Also as here, the franchise agreement in *Gingiss* provided, with irrelevant exceptions, that all disputes between the parties relating to the agreement would be subject to arbitration in accordance with the Commercial Arbitration Rules of the AAA. *Id.* at 330. Similar to the present case, a section of the franchise agreement separate from the arbitration clause provided that "'[a]ll written notices permitted or required to be delivered by the provisions

---

[7]Indeed, there is no evidence that the Franchisees were ever actually even found at either of these addresses.

of this Agreement' shall be delivered by hand or by registered or certified mail." *Id.* at 333.

The franchisor, Gingiss, sought to arbitrate a dispute with its franchisee, H-K Formalwear, and the franchisee's guarantors, the Bormets, under the franchise agreement.[8] *Id.* at 331. The Seventh Circuit's opinion provides the following facts concerning notice:

> Gingiss' attorney sent a copy of Gingiss' arbitration demand by regular mail to the Bormets at a post office box in Old Fort, North Carolina. This was the same address to which Gingiss had previously sent correspondence to the Bormets, and the Bormets had regularly replied. The AAA sent a letter by regular mail to the same address on December 30, 1993, notifying the Bormets of the arbitration proceeding. The AAA sent three additional letters concerning the arbitration proceeding by regular mail to the Bormets at this address in January 1994. Neither Gingiss' arbitration demand nor any of the AAA's letters was ever returned as undelivered.

*Id.*

The Bormets did not appear for the arbitration proceedings. Following the franchisor's presentation of its case, the arbitrator entered an award in favor of the franchisor. *Id.* Pursuant to an action by the franchisor, the district court confirmed the arbitration award. The Bormets appealed, arguing, *inter alia*, that the arbitration award should be vacated because they did not receive actual notice of the arbitration, which notice, the Bormets contended the franchise agreement required to be delivered by hand or by registered or certified mail. *Id.* at 333.

The Seventh Circuit held:

---

[8]In a Shareholder's and Officer's Agreement, the Bormets had agreed to be bound by all obligations under the franchise agreement as if each was a franchisee. *Gingiss*, 58 F.3d at 330.

The Bormets' reliance on section eighteen of the franchise agreement, which provided that "[a]ll written notices permitted or required to be delivered by the provisions of this Agreement" shall be delivered by hand or by registered or certified mail, is . . . misplaced. "[A] document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, ___, 115 S. Ct. 1212, 1219, 131 L. Ed. 2d 76 (1995). Section eighteen, by its terms, applied only to notices which were required to be sent under the franchise agreement, such as default or termination notices. The arbitration clause, which is contained in section sixteen of the agreement, governed the notice procedures in the arbitration.

*Gingiss*, 58 F.3d at 333.

The Seventh Circuit's reading of the franchise agreement at issue in *Gingiss* and Franchisor's reading of the Franchise Agreement at issue in the present appeal disregard the plain and unambiguous language of those agreements. With respect to the case at hand, Section 15 unambiguously provides that "*All notices required or permitted under this Agreement* must be in writing, must be personally delivered or mailed by registered or certified mail, return receipt requested, or by a nationally recognized courier service to . . . [Franchisees] at the Designated Representative's address." (J.A. 15) (emphasis added). **All** means **all**. While the Arbitration Clause sets forth the crux of the arbitration terms of the Franchise Agreement, including that any arbitration would be governed by the Commercial Arbitration Rules of the AAA, the Arbitration Clause does not contain language otherwise trumping the all encompassing notice-to-the-properly-designated-representative language of Section 15. The logic of the district court's vacature of the Arbitration Award is even more apparent when one considers that AAA Commercial Rule R-1 provides that the Commercial Rules of AAA apply whenever the parties provide for arbitration by the AAA, but that the "**parties, by written agreement, may vary the procedures set forth in these rules**." (emphasis added).

In conclusion, we uphold the district court's vacature of the Arbitration Award on the basis that, the Franchisees having not received

notice of the arbitration proceedings in accord with the Franchise Agreement and having not otherwise received notice, such award does not draw its essence from the Franchise Agreement. More specifically, the Arbitration Award does not draw its essence from the Franchise Agreement because, by failing to ensure that notice of the initiation of the arbitration proceedings was sent to the Franchisees' Designated Representative, under the Franchise Agreement, as provided by the unambiguous language of the Franchise Agreement, the AAA Arbitrator disregarded unambiguous contract provisions. *Id.* at 235. Accordingly, we affirm the district court's vacation of the Arbitration Award. We note that Franchisor remains free to properly notice arbitration proceedings against the Franchisees by mailing Demands for Arbitration to the Designated Representative, which, as far as the record reflects, remains Elaine Bracci at the Hotel address.

## III.

We next briefly address the Franchisees' cross-appeal challenging the district court's denial of their motion seeking an award of attorneys' fees and costs under the terms of the Franchise Agreement. Franchisees' cross-appeal is without merit.

The "**Attorneys' Fees**" provision in the Franchise Agreement, set forth in Section 17 of such agreement, provides:

> The prevailing party in any action filed to enforce the terms of this Agreement (as determined by the Court or arbitrator) may recover from the other party the reasonable expenses of its attorneys in bringing the action, its court costs, the reasonable costs of its expert witnesses and the reasonable travel costs (including food and lodging) of all of its witnesses in the action. You and we agree that any money judgment or arbitration award will provide for interest at the rate referred to in Section 4.e. until paid.

(J.A. 15).

The district court properly denied Franchisees' motion for attorneys' fees and costs under this language because, given that this case

has not yet been resolved on the merits, the motion is premature. Under the plain terms of Section 17 of the Franchise Agreement, there is yet to be a prevailing party in Franchisor's federal action to enforce the terms of the Franchise Agreement or in its pursuit of the same in arbitration. *Cf. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Servs.*, 532 U.S. 598 (2001) (attorney fee-shifting provisions of the Fair Housing Amendments Act and of the Americans with Disabilities Act, which permit court, in its discretion, to award reasonable attorney fees to prevailing party in litigation under those statutes, require party to secure either a judgment on merits or court-ordered consent decree in order to qualify as "prevailing party"); *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1156 (9th Cir. 1998) (holding plaintiff's claim for attorneys' fees as prevailing party under attorneys' fees provision of the Americans with Disabilities Act was premature; plaintiff's claim under the Act had not yet been decided on the merits; rather, plaintiff had only successfully avoided employer's claim that dispute was subject to arbitration). Accordingly, we affirm the district court's denial of Franchisees' motion for attorneys' fees and costs.

### IV.

For the reasons stated, we affirm the district court in both appeals.[9]

*AFFIRMED*

TRAXLER, Circuit Judge, concurring in part and dissenting in part:

The parties in this case agreed to arbitrate their disputes in accordance with the commercial arbitration rules of the American Arbitration Association, and notice of the commencement of arbitration proceedings was provided to the Cuns and SM Property Management

---

[9]Two final contentions of the Franchisees require mention. Franchisees contend that we lack subject matter jurisdiction over this entire action and that Franchisor's notice of appeal was untimely. We reject both contentions. Having reviewed the record and the relevant legal authorities, we are wholly satisfied that we possess subject matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332, and that Franchisor timely filed its notice of appeal.

(collectively, the "Owners") in accordance with those rules. Given the exceedingly deferential standard governing judicial review of commercial arbitration awards, I believe that the district court erred by vacating on grounds of insufficient notice the arbitration award entered against the Owners. Accordingly, I respectfully dissent from the affirmance of that aspect of the district court's opinion.[1]

I.

The Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1-16 (West 1999 & Supp. 2007), establishes a strong federal policy favoring arbitration. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "A policy favoring arbitration would mean little, [however], if arbitration were merely the prologue to prolonged litigation." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994). Thus, in order "to preserve the benefits of arbitration," *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5 (4th Cir. 1998), judicial review of commercial arbitration awards is "substantially circumscribed." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir.), *cert. denied*, 127 S. Ct. 434 (2006). "[T]o allow full scrutiny of such awards would frustrate the purpose of having arbitration at all — the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply*, 142 F.3d at 193.

A federal court may vacate an arbitration award only if the moving party sustains "the heavy burden of showing one of the grounds specified in the [FAA] or one of certain limited common law grounds." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007). Under the FAA, a federal court may vacate an arbitration award if (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators"; (3) the arbitrator was guilty of misconduct or misbehavior in conducting the hearing in a manner which prejudiced a party's

---

[1]I agree that the requirements of diversity of jurisdiction have been satisfied and that the notice of appeal was timely filed. I also agree that the district court properly denied the Owners' motion seeking attorney's fees and costs. Accordingly, I concur in Parts III and IV of the majority opinion.

rights; or (4) the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10(a) (West Supp. 2007).

"The permissible common law grounds for vacating such an award . . . include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Patten*, 441 F.3d at 234. An award fails to draw its essence from the contract if the "arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong. An arbitration award, however, does not fail to draw its essence from the agreement merely because a court concluded that an arbitrator has misread the contract." *Three S Del.*, 492 F.3d at 528 (citation and internal quotation marks omitted).

## II.

The Franchise Agreement in this case provides that "[a]ll notices required or permitted under this Agreement" must be sent to Choice at a specified address and to the Owners at the address of the designated representative as defined in the Franchise Agreement. J.A. 15. The Owners assert that this provision obligated Choice to send notice of the arbitration proceedings to the address of the designated representative as identified in the Franchise Agreement. The arbitration notice was not sent to that address. Instead, in accordance with the AAA's rules, the notice was sent to the Owners' last known addresses — the addresses Choice just a few months prior had used to successfully serve the Owners with the summons and complaint in its breach of contract action. Because Choice did not send the arbitration notice to the address of the designated representative, the Owners contend that the arbitration award did not draw its essence from the Franchise Agreement and that the district court properly vacated the award.

In *Gingiss International, Inc. v. Bormet*, 58 F.3d 328 (7th Cir. 1995), however, the Seventh Circuit rejected a similar claim about the import of a contractual notice provision that was largely identical to the notice provision at issue in this case. In *Gingiss*, a franchisor instituted arbitration proceedings against a former franchisee seeking

damages for breaches of the franchise agreement. *See id.* at 330-31. The franchisor sent notice of the arbitration to the officers of the franchisee corporation at a post office box to which it had previously sent correspondence to the officers. The officers had regularly responded to the correspondence that was sent to that post office box. The American Arbitration Association also sent letters regarding the arbitration proceeding to that address. As in this case, none of the letters sent by the Franchisor or the AAA to that address were ever returned to the sender. *See id.* at 331. The officers did not appear in the arbitration proceedings, and the arbitrator awarded the franchisor judgment against the officers. When the franchisor sought to confirm the arbitration award in federal court, the officers appeared and argued that the award should be vacated. The district court confirmed the award, and the officers appealed. *See id.*

On appeal, the officers contended, as the Owners do here, that the franchise agreement required notices to be sent to an address different from the post office box used by the franchisor. The Seventh Circuit rejected that reading of the contract:

> The [officers'] reliance on section eighteen of the franchise agreement, which provided that 'all written notices permitted or required to be delivered by the provisions of this Agreement' shall be delivered by hand or by registered or certified mail, is also misplaced. A document should be read to give effect to all its provisions and to render them consistent with each other. *Section eighteen, by its terms, applied only to notices which were required to be sent under the franchise agreement, such as default or termination notices. The arbitration clause, which is contained in section sixteen of the agreement, governed the notice procedures in the arbitration.*

*Id.* at 333 (emphasis added; citation and internal alteration omitted)). The Seventh Circuit thus concluded that the arbitration award was valid and that the district court properly confirmed the award.

*Gingiss*, of course, is not binding on this court. It is nonetheless relevant that the Seventh Circuit's understanding of the meaning of a functionally identical contractual notice provision is diametrically

opposed to the interpretation urged by the Owners in this case. As noted above, a court may conclude that an arbitration award fails to draw its essence from the contract if the arbitrator disregarded *unambiguous* contract terms. *See Three S Del.*, 492 F.3d at 528. The differing judicial interpretations of largely identical notice provisions at the very least suggests that the notice provision in this case did not *unambiguously* require the arbitration notice to be sent to the address of the designated representative. *See Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 624 (Md. 1995) ("[C]onflicting interpretations of policy language in judicial opinions is not determinative of, but is a factor to be considered in determining the existence of ambiguity.");[2] *see also Bankwest v. Fidelity & Deposit Co. of Md.*, 63 F.3d 974, 978 (10th Cir. 1995) ("The fact that judicial opinions have interpreted identical policy provisions differently may demonstrate ambiguity.").

Although I am inclined to conclude, like the *Gingiss* court, that the notice provision in the Franchise Agreement does *not* require a notice of the commencement of arbitration proceedings to be sent to the address of the designated representative, it is not necessary to reach a definitive conclusion on that question. Instead, it suffices to say that, at the very least, the notice provision contained in the Franchise Agreement cannot be read as *unambiguously* requiring notice of arbitration to be sent to the Owners at the address of the designated representative. Notices "required" under the Franchise Agreement include notice of default and notice of termination of the Agreement. The arbitration clause itself, however, does not include a notice requirement, but instead simply provides that claims will be arbitrated in accordance with the AAA's commercial arbitration rules. Because the Franchise Agreement itself does not speak to the notice required to commence arbitration proceedings, it is far from certain that notice of arbitration is notice "required or permitted under" the Franchise Agreement.

The determination that the Franchise Agreement does not unambiguously require an arbitration notice to be sent to the address of the

---

[2]State law generally governs contract-interpretation issues arising in an arbitration dispute. *See, e.g.*, *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 100 (2d Cir, 2002). In this case, the Franchise Agreement calls for the application of Maryland law.

designated representative is fatal to the Owners' claim that the arbitration award did not draw its essence from the contract. An arbitrator's disregard of an unambiguous contract term may justify setting aside an arbitration award, but the failure to recognize an ambiguity or other mistake in interpreting the contract will not. *See Three S Del.*, 492 F.3d at 528 ("An arbitration award . . . does not fail to draw its essence from the agreement merely because a court concluded that an arbitrator has misread the contract."); *cf. United States Postal Serv. v. American Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)).

In this case, the arbitrator found sufficient the notice of the arbitration proceeding, which was sent in accordance with the AAA's rules to the last known address of the Owners,[3] and the arbitrator therefore proceeded to consider the merits of Choice's claims. Although the arbitrator did not expressly consider whether the Franchise Agreement required a different method of notifying the Owners of the arbitration proceeding, that omission cannot justify vacating the award. "Courts of Appeals do not review the reasoning of arbitrators in determining whether their work draws its essence from the contract, but look only to the result reached; the single question is whether the award, however arrived at, is rationally inferable from the contract." *Apex Plumbing*, 142 F.3d at 193 n.5; *see also Champion Int'l Corp. v. United Paperworkers Int'l Union, AFL-CIO*, 168 F.3d 725, 729 (4th Cir. 1999) (explaining that "an arbitrator is generally under no obligation to provide reasons for his decision"). It is rationally inferable from the award in favor of Choice that the arbitrator concluded that the notice provision of the Franchise Agreement did not govern the manner in which notice of arbitration must be provided. Because the Franchise Agreement in my view does not unambiguously provide

---

[3]To the extent that the Owners contend the addresses used by Choice were not in fact the last addresses known to Choice, that argument is unavailing. *See Champion Int'l Corp. v. United Paperworkers Int'l Union, AFL-CIO*, 168 F.3d 725, 728 (4th Cir. 1999) ("A court does not sit to hear claims of factual . . . error by an arbitrator . . . ." (internal quotation marks omitted)).

otherwise, the award drew its essence from the Franchise Agreement, and our inquiry should therefore end. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.").

I recognize that the record before us does not contain the answers to intriguing questions, such as whether Choice brought to the arbitrator's attention the Franchise Agreement's notice provision and why Choice did not elect to send the arbitration notice to the address of the designated representative *and* the addresses it had used when commencing the lawsuit. But as relevant as such questions would seem to be, I believe that our standard of review forecloses inquiry into these issues.

At issue in this appeal is whether the arbitrator's award drew its essence from the Franchise Agreement, a question of law involving basic principles of contract interpretation. *See Seabulk Offshore Ltd. v. American Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004) ("The interpretation of a written contract is a question of law that turns upon a reading of the document itself . . . ."); *see also In re Vital Basics, Inc.*, 472 F.3d 12, 17 (1st Cir. 2006) (explaining that a claim that an arbitration award violated the terms of the underlying contract "is a legal claim involving contract construction"). While the Owners contend the Franchise Agreement required the arbitration notice to be sent to the address of the designated representative and I believe it does not, the question is a purely legal one that is resolved by consideration of the language of the contract itself. *See, e.g.*, *Washington Metropolitan Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (explaining that under Maryland law, "the purpose of contract interpretation is to determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself" (internal quotation marks and alteration omitted)). The questions that spring to mind when considering the facts of this case are interesting, but neither the questions themselves nor their answers shed any light on the meaning of Fran-

chise Agreement. That these questions are not answered by the current record thus should not affect the disposition of this appeal.[4]

I would hold that the arbitration award drew its essence from the contract and that the district court erred by vacating the award. Accordingly, I dissent from Part II of the majority opinion.

---

[4]If these questions were somehow relevant to the issues presented on appeal, it seems to me that the absence of any answers should lead not to the vacating of the arbitration award but instead to a remand to the arbitrator for clarification. *See Cannelton Indus., Inc. v. District 17, United Mineworkers of America*, 951 F.2d 591, 594 (4th Cir. 1991) ("When an arbitrator does provide reasons for a decision and when those reasons are so ambiguous as to make it impossible for a reviewing court to decide whether an award draws its essence from the agreement, the court may remand the case to the arbitrator for clarification.").